UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CONNECTICUT ATTORNEYS TITLE
INSURANCE COMPANY,
        Plaintiff,

v.                                          C.A. No. 10-165 ML

CASMAT, LLC,
        Defendant.

## **MEMORANDUM AND ORDER**

Plaintiff, Connecticut Attorneys Title Insurance Company ("Plaintiff"), has filed a complaint against Defendant, Casmat, LLC ("Defendant"), seeking a declaration concerning Plaintiff's rights and obligations pursuant to a title insurance policy it issued to Defendant. Specifically, Plaintiff petitions this Court for a judgment finding that Defendant's claims are not covered under the title insurance policy and that Plaintiff has a right to discontinue its involvement in the prosecution and defense of a lawsuit pending in Rhode Island Superior Court. The matter is before the Court on Plaintiff's motion for summary judgment.

### I. Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the pertinent evidence is such that a rational factfinder could resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." National Amusements, Inc. v.

Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Id. The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Id.

Plaintiff filed a statement of undisputed facts with its motion. Defendant, however, did not file a statement of disputed facts with its objection. See DRI LR Cv 56(a)(3) ("any fact alleged in the movant's Statement of Undisputed Facts shall be deemed admitted unless expressly denied or otherwise controverted by a party objecting to the motion. An objecting party that is contesting movant's Statement of Undisputed Facts shall file a Statement of Disputed Facts"). Consequently, for purposes of deciding the summary judgment motion, the Court finds that Defendant has admitted the facts in Plaintiff's statement. Indian Harbor Insurance Co. v. Assurance Co. of America, CA 08-146 ML, 2010 WL 2365571 (D.R.I. May 21, 2010), report and recommendation adopted, 2010 WL 2346654 (D.R.I. June 9, 2010).

## II. Background
### A. Facts

In or about 1967, Norbert Coutu ("Coutu"), acting through Apple Valley Mall, Inc., assembled a large parcel of real estate adjacent to Route 44 in Smithfield, Rhode Island ("Coutu Site"). The Coutu Site was a combination of two subdivisions. Coutu filed a map, depicting the proposed use of the parcel, in the land evidence records of the town of Smithfield. The map contained restrictive language preventing the establishment of any barriers between the two subdivisions. At some point after the map was filed, Apple Valley Mall, LLC ("AVM") developed the western portion of the Coutu Site as the Apple Valley Mall.

In December 1995, The Eastborne LLC ("Eastborne") acquired ownership of lot 21A of the Coutu Site. Andrew J. Matteo ("Matteo") is the manager and sole shareholder of Eastbourne. Matteo is also Defendant's manager. In April 1997, AVM sued Eastbourne in Rhode Island Superior Court alleging trespass and slander of title. Eastbourne answered the complaint, counterclaimed and asserted that it had an easement over AVM's property. Attorney Peter J. Rotelli ("Rotelli") represented Eastbourne in the 1997 lawsuit.[1] Rotelli is Defendant's registered agent.

On or about November 14, 1997, Eastbourne transferred title to Lot 21A to AV Realty, LLC ("AV Realty"). AV Realty subsequently also acquired Lot 21C of the Coutu Site. Matteo is also the manager of AV Realty. In February 2004, title to Lots 21A and 21C ("property") passed to Apple Valley Investment Associates ("AVIA"), a partnership. Rotelli is AVIA's general partner.

In July 2004, AVIA transferred title to the property to Defendant. Defendant obtained a $2,950,000 loan from People's Bank to acquire the property. People's Bank required Defendant to secure title insurance. Rotelli represented Defendant on both the acquisition of the property and the loan transaction.

Upon receipt of Defendant's application, on July 2, 2004, Plaintiff issued a mortgage/owner title insurance policy ("Policy") identifying Defendant as the owner/insured of the property and People's Bank as the mortgagee/insured of the property. At the time Plaintiff

---

[1] At oral argument on the motion, Plaintiff's counsel informed the Court that the lawsuit has never been resolved and it has not been dismissed. It appears the lawsuit has been dormant for over a decade.

issued the Policy, Plaintiff was *not* aware of the 1997 AVM lawsuit. Both Matteo and Rotelli, however, were aware of the 1997 AVM lawsuit before the Policy was issued.

In 2005, Defendant, represented by Rotelli, commenced an action against AVM in Rhode Island Superior Court. In this lawsuit, Defendant claimed that the Coutu Site restrictive language created an easement providing Defendant with access to Route 44 through AVM's property. The disputed access rights are the subject of both the 1997 and 2005 lawsuits.

In August 2005, Defendant asserted its first claim ("Claim #1") under the Policy. In Claim #1, Defendant alleges that the disputed access rights are interfering with its plans to develop the property. Defendant claims that, pursuant to the Policy, Plaintiff is required to provide indemnification and defense costs related to the resolution of the disputed access rights. Plaintiff, unaware of the history of the property and the pre-existing dispute between AVM and Eastbourne, agreed to represent Defendant in the 2005 lawsuit. Plaintiff has defended Defendant's interest since 2005 and has also paid counsel to prosecute the lawsuit.

In 2010, Defendant submitted a second claim ("Claim #2") under the Policy. In claim #2, Defendant alleges that Narragansett Electric Company ("NEC"), which had easements on the property long before Defendant acquired the property, would not allow Defendant to construct an access road through the NEC easements. Defendant claims that the NEC easements are preventing it from commercially developing its property, thereby rendering it useless.

### B. The Policy Language

The Policy contains the following language:

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE
> EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B
> AND THE CONDITIONS AND STIPULATIONS, CONNECTICUT

> ATTORNEYS TITLE INSURANCE COMPANY, a Connecticut corporation . . . insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:
>
> 1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
>
> 2. Any defect in or lien or encumbrance on the title;
>
> 3. Unmarketability of the title;
>
> 4. Lack of a right of access to and from the land.

Plaintiff's Rule 56(a) Statement at ¶ 35.

> The Policy also provides that the
>
>> following matters are expressly excluded from the coverage of this policy and [Plaintiff] will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
>> . . . .
>>
>> 3. Defects, liens, encumbrances, adverse claims or other matters:
>> . . . .
>>
>> (b)  not known to [Plaintiff], not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to [Plaintiff] by the insured claimant prior to the date the insured claimant became an insured under this policy[] . . . .

Id. at ¶ 37.

The Policy also excepts from coverage several easements granted to NEC. The Policy provides that Plaintiff will "affirmatively insure that the [NEC easements] do not interfere with the beneficial use of the property." Id. at 25.

## C. The Parties' Contentions

Plaintiff contends that the policy is void ab initio because Defendant did not disclose the

existence of the 1997 lawsuit when Defendant applied for title insurance. Plaintiff argues, in the alternative, that even if the Policy is not void, the Policy excludes coverage for Defendant's claims. In essence, Defendant contends that Plaintiff's failure to inquire about "issue[s] relating to the [p]roperty" evidences Plaintiff's failure to bargain in good faith thus leaving material issues of fact in dispute which preclude the grant of summary judgment. Objection and Memorandum in Support of Objection to Plaintiff's Motion for Summary Judgment at 8.

### III. Analysis

The purpose of title insurance is to protect the insured against potential losses resulting from defects in title. City of East Providence v. First American Title Insurance Co., No. CA 10-199 ML, 2011 WL 5521246 (D.R.I. Oct. 13, 2011), report and recommendation adopted, 2011 WL 5527604 (D.R.I. Nov. 14, 2011). Title insurance policies are subject to the same strict rules of construction that apply to other insurance contracts. Falmouth National Bank v. Ticor Title Insurance Co., 920 F.2d 1058 (1st Cir. 1990). The terms of an insurance contract must be given their plain and ordinary meaning, and the "test to be applied is not what the insurer intended, but what the ordinary reader and purchaser would understand them to mean." Zarrella v. Minnesota Mutual Life Insurance Co., 824 A.2d 1249, 1259 (R.I. 2003). A contract is ambiguous only when it is "reasonably and clearly susceptible of more than one interpretation." Id. (internal quotation marks and citation omitted). If the Court finds the terms of a contract to be unambiguous, the parties are bound by the plain and ordinary meaning of the contract terms. Id. Plaintiff has the burden or proving that an exclusion applies. City of East Providence, 2011 WL 5521246. With these principles in mind, the Court considers Plaintiff's motion.

TRUNCATED
TRUNCATED

## A. Claim #1 – Disputed Access Rights

The Policy excludes from coverage any "[d]efects, liens, encumbrances, adverse claims or other matters" that are "not known to [Plaintiff], not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to [Plaintiff] by the insured claimant prior to the date the insured claimant became an insured under" the Policy. Plaintiff's Rule 56(a) Statement at ¶ 37. The application of this exclusion requires the existence of four distinct elements: (1) an adverse claim not known to the insurer; (2) that claim was not recorded in the public records as of July 2, 2004;[2] (3) the insured was aware of the claim; and (4) the insured did not disclose the claim (in writing) to the insurer prior to the insured becoming an insured under the Policy. See id.

It is undisputed that (1) Plaintiff was not aware of the 1997 AVM lawsuit at the time the Policy was issued; (2) the dispute over the right of access was not recorded in land evidence records at the time the Policy was issued; (3) Defendant, through both Matteo and Rotelli, was aware of the 1997 AVM lawsuit; and, (4) Defendant did not advise Plaintiff, in writing, of the 1997 AVM lawsuit before it became an insured under the Policy. All four required elements of the exclusion have been met; consequently, the Policy clearly excludes the claim from coverage. See generally Dickins v. Stiles, 916 P.2d 435, 438 (Wash. App. 1996) (finding that similar exclusionary language was "akin to a notice requirement"); Kirwan v. Chicago Title Insurance Co., 612 N.W.2d 515, 524 (Neb. Ct. App. 2000), aff'd in part and rev'd in part, 624 N.W.2d 644 (Neb. 2001) (title insurance policy "clearly excludes from coverage those claims which the

---

[2]The Policy defines the term "public records" as the "records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge." Insurance Policy at 2; Definition of Terms.

insureds had knowledge about, but failed to disclose in writing to the insurer"); Laabs v. Chicago Title Insurance Co., 241 N.W.2d 434 (Wis. 1976) (if insured has knowledge of adverse claim or defect, the title insurance company may avoid providing coverage if it was not informed of adverse claim).

### B. Claim # 2 – NEC Easements

In the second claim under the Policy, Defendant alleges that because NEC would not allow Defendant to construct an access road through NEC easements, the easements were preventing Defendant from commercially developing the property and thus rendered the property useless. Plaintiff argues that the Policy excepts this claim from coverage. Defendant does not address this claim in its response to the motion for summary judgment.

The Policy, under the section titled "exceptions from coverage," provides that the Policy "does not insure against loss or damage (and . . . [Plaintiff] will not pay costs, attorney's fees or expenses) which arise by reason of" the NEC easements.[3] Insurance Policy, Schedule B – Part I, Exceptions From Coverage. The Policy also provides that Plaintiff "will affirmatively insure that the exceptions . . . do not interfere with the beneficial use of the property." Id. at Continuation Sheet.

The unambiguous language of the Policy states that Plaintiff agrees to insure that NEC's use and operation of its easement does not harm Plaintiff's ability to effectively utilize the property. In essence, in Claim #2, Defendant argues that NEC is not allowing Defendant to interfere with NEC's easement. The Policy does not insure against Defendant's inability to

---

[3]The Policy lists the NEC easements on a special exception continuation sheet and excepts them from coverage under the Policy.

interfere with NEC easements. "An exception is an uninsured interest . . . . It is one that has been expressly written out of the policy during the underwriting process . . . ." Barlow Burke, Law of Title Insurance § 9.01 (2010).

## IV. Conclusion

For the reasons stated above, Plaintiff's motion is granted. The Court finds that Claim #1 and Claim #2 are not covered under the Policy and Plaintiff has the right to discontinue its involvement in the prosecution and defense of the 2005 lawsuit. The Clerk is directed to enter judgment for the Plaintiff.


SO ORDERED.

/s/ Mary M. Lisi
Mary M. Lisi
Chief United States District Judge
February 2, 2012